Busigó, Demandante y Apelada, *v.* Sucesión de la Texera, Demandada y Apelante.

No. 3181.—*Visto:* Marzo 14, 1924. *Resuelto:* Julio 26, 1924.

Filiación—Prueba de la Filiación.—En la opinión se analiza la evidencia ofrecida por los demandantes nacidos en 1909 y 1913 y se concluye que la filiación quedó suficientemente probada.

Sentencia de *R. Díaz Cintrón,* J. (Ponce), en una acción de filiación, declarando con lugar la demanda, con las costas. *Confirmada.*

*M. Bahamonde* y *L. López de Victoria,* abogados de la apelada; *G. Rodríguez,* abogado de la apelante.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Josefa Busigó en representación de sus menores hijos Julio y Angel inició un pleito en la Corte de Distrito de Ponce contra la Sucesión de Agustín de la Texera compuesta de Belén de la Texera, hermana de Agustín, en demanda de una sentencia que declarara que los dichos menores son hijos naturales reconocidos de Agustín de la Texera.

Contestó la parte demandada oponiéndose y alegando que Texera vivió siempre solo en su propia casa oficina, sin que tuviera relaciones de concubinato con mujer alguna y falleció en casa de la demandada asistido de sus familiares.

Fué el pleito a juicio. Practicóse la prueba ofrecida por ambas partes y la corte finalmente dictó sentencia declarando la demanda con lugar. No conforme la parte demandada apeló, señalando en su alegato dos errores así:

''La corte incurrió en un manifiesto error al admitir probado los hechos alegados por la demandante en su demanda.

''La corte incurrió en manifiesto error de derecho al admitir que

la evidencia ofrecida por la demandante es de aquellas que la ley y la jurisprudencia admiten para justificar la filiación de un hijo natural.''

Ambos errores fueron discutidos conjuntamente, invocando especialmente para sostener el segundo la jurisprudencia establecida últimamente por este tribunal en el caso de *Medina* v. *Sucesión Bird,* 30 D.P.R. 158, a saber:

''El concubinato a que se refiere el inciso 3 del artículo 189 del Código Civil tal como regía en 1903 es la condición de vivir juntos como marido y mujer sin estar casados, el supuesto padre y la madre de la persona que reclama el reconocimiento. No es suficiente que un hombre coloque a una mujer en una casa y frecuentemente la visite, especialmente si él tiene un hogar propio independiente como la prueba tiende a mostrar en este caso.

''En una demanda entablada al amparo del artículo 189 del Código Civil tal como regía en 1903 en la cual se alega que el supuesto hijo natural es el fruto de las relaciones amorosas que sostuvo la demandante con el demandado, es necesario probar que éstos, al tiempo de la concepción, tenían la intención de casarse o estaban comprometidos para ello.''

Estamos conformes con las siguientes manifestaciones contenidas en el alegato de la parte apelante:

''La cuestión planteada envuelve una acción de filiación de dos hijos naturales, nacidos uno el 14 de julio de 1909 y el otro el 29 de noviembre de 1923. La evidencia, pues en cada caso se regula por la ley vigente al tiempo de los respectivos nacimientos.

''Siendo esto así, son aplicables los preceptos del artículo 189 del Código Civil revisado respecto al hijo nacido en el año 1909, y los del artículo 193 de la ley de la Asamblea Legislativa aprobada el año 1911, respecto al hijo nacido en el año 1913.

''Con relación al primero de esos hijos, la demandante tenía que probar de una manera clara y con pruebas vigorosas, cualquiera de los siguientes extremos:

''1. Que existía escrito indubitado de Agustín de la Texera que expresamente reconozca su paternidad.

''2. Que pública o privadamente tuvo por hijo al niño de que se trata, o que lo hubiera llamado hijo en conversación, o que se ocupó de la educación o sostenimiento del mismo.

"3. Que la demandante y Texera se hallaban viviendo en concubinato al embarazo y nacimiento del niño, o que al ocurrir ese nacimiento ellos llevaban relaciones amorosas.

"Con relación al segundo de esos hijos, la demandante tenía que probar de una manera clara y con prueba vigorosa también, los extremos siguientes:

"1. Que existía escrito indubitado de Texera que expresamente reconozca su paternidad.

"2. Que el hijo se hallaba en la posesión continua del estado de hijo natural del padre de acuerdo con los actos de éste o de su familia.

"3. Que la demandante y el supuesto padre vivían en concubinato al embarazo o nacimiento del hijo, o que estaban en relaciones amorosas cuando tuvo lugar el nacimiento.

"4. La existencia de prueba auténtica de la paternidad."

Pero hemos examinado las pruebas y a nuestro juicio los hechos y la ley justifican la sentencia.

Después de acreditados por prueba documental el nacimiento de los menores y la muerte de Agustín de la Texera, el primer testigo que declaró fué la demandante. Su testimonio llena diez y ocho páginas de la transcripción. Fué sometida a un largo y hábil contrainterrogatorio, pero se mantuvo siempre firme. Conoció a Texera desde señorita, después se casó y quedó viuda. Pasaron tres años y Texera comenzó a enamorarla. Texera era dentista y la declarante tenía su boca en muy mal estado y él ofreció curarla. Ella fué a su despacho y él insistió en sus amores y le propuso que viviera con él y si se portaba bien se casaría con ella. Al fin se unieron y vivieron bajo el mismo techo, pagando él los gastos y atendiendo al nacimiento de los hijos producto de la unión. Texera atendió a la educación de los hijos, "dondequiera que los encontraba los llevaba y los llamaba como hijos de él." El tenía "la idea de que hoy o mañana fueran legítimos porque esa era la idea de él." La declarante vivía con su madre. Texera contribuyó para arreglar la casa, le compró muebles, dormía regularmente allí.

Al levantarse, lá declarante le preparaba té porque no tomaba café por ser un hombre siempre enfermo del estómago. Insistió repetidamente en sus repreguntas el abogado de la parte demandada y la declarante reconoció que Texera tenía en su oficina una habitación con todo lo necesario y que en ella dormía varias veces y que una vez se enfermó y permaneció en su oficina a donde fué a asistirlo la declarante, retirándose cuando llegó su hermana. Finalmente Texera se alejó de la declarante porque tuvo un disgusto con la madre de la declarante que insistía en que él debía casarse. Repreguntada si había atendido toda la vida a Texera, contestó: "Toda la vida hasta que murió nó, porque como después de eso yo le dije que estábamos así en disgustos con mi mamá, que él se puso a hablar de ella y yo no se lo iba a permitir, yo le dije: si usted no quiere vivir más, yo sé trabajar, yo trabajaré y quedamos así." Volviendo otra vez sobre los hijos dijo la declarante refiriéndose a Texera: "Paseaba con los dos, con el más grandecito y con el otro que estaba empezando a andar. . . . . Por la tardecita había veces que los llevaba a la plaza, él se sentaba allí y los nenes se ponían a jugar. . . . . Sí, señor, tenía que verlo toda la gente, porque es un pueblo chiquito."

Luego declaró el testigo Juan Belazco y en parte, dijo:

"Yo sé que don Agustín tuvo dos niños en doña Josefa Busigó y que él vivía con ella en una casa en la calle Buena Vista extremo este y que varias veces yo pasaba por ahí y lo veía a él de noche en la vivienda esa y una noche yo le pregunté: ¿qué tu buscas por aquí? y dice: nada yo vivo por aquí con esta muchacha y tengo dos hijos en ella y uno más que se le murió. . . . . El estaba inclinado a reconocerlos porque él visitaba cierta familia en Yauco y la familia le llamaba la atención sobre reconocer los niños y ellos decían que él decía que sí, que los iba a reconocer."

Respondiendo a la siguiente pregunta: "¿Quiere decir que usted sabe eso de que él vivía en concubinato porque usted pasó una vez por allí y lo vió?" Contestó: "No precisamente en concubinato, porque habiéndose enfermado una

vez don Agustín de la Texera, que tenía su oficina en el centro del pueblo, la señora ésta vino a asistirlo.''

Luego dijo que vió los niños en la oficina de Texera y agregó: ''Pues los acariciaba, los llamaba y había un niñito, particularmente, que él tenía la quijada de abajo pronunciada para adelante y aquel chiquito que se murió tenía el mismo defecto y yo le decía: mira chico exactamente salió a tí.''

Amelia Vans declaró que era comadrona y que a requerimiento de Texera que la fué a llamar personalmente, asistió a Josefa Busigó en el nacimiento de sus hijos. Su declaración está llena de detalles. A la siguiente pregunta: ''¿Vivía don Agustín Texera en la misma casa esa?'', contestó: ''Yo siempre lo encontré allí todas las veces que fuí.''

Emeterio Collado testificó que conoció a Texera en Yauco y vió a los niños en su oficina, quienes le llamaban papá. Los niños eran tres, uno murió. Preguntado: ''¿Usted le habló alguna vez a él si esos niños estaban reconocidos o nó?'', contestó: ''No, pero él me dijo una vez: yo los reconoceré con el tiempo, porque son hijos míos.''

Con respecto a vivir juntos, expresó que Josefa Busigó vivía en la calle Buena Vista, en la casa de la madre, y que muchas veces al pasar por allí vió en la casa a Texera.

Por último declaró el niño Julio Busigó, de trece años de edad, que dijo que Texera era su padre, que lo acariciaba y le compraba zapatos y lo llevó a la escuela, que cursaba ahora el cuarto grado; que su padre murió en Ponce en casa de su familia; su mamá lo llevó; subió a la casa donde estaba el cadáver, una casa grande, de dos pisos, y a las tres y media de la tarde al salir el entierro lo siguió yendo hasta el cementerio.

Por la parte demandada declararon los testigos Emilio Bacó, Luis Quesada, Antonio de Carde, Luis Sotomayor y Alberto de la Texera. Todos ellos eran amigos íntimos o parientes de Texera. Aseguran haberle conocido bien y sostienen que jamás se enteraron de que Texera tuviera relacio-

nes amorosas con Josefa Busigó; que Texera vivía en su habitación, en su oficina, y comía allí o en casa de determinadas familias; que jamás recibieron de él confidencias en el sentido de que tuviera hijos naturales. Tiende alguno de los testimonios a negar la asistencia de niño alguno al entierro de Texera.

Esa fué la evidencia ofrecida por las partes a la conciencia del juzgador. El juez de distrito no emitió la opinión clara y precisa que debió emitir, pero basándonos en su fallo, debemos concluir que dió crédito a los testigos de la parte demandante.

De peso son sin duda las declaraciones de los testigos de la parte demandada. Parecen personas serias que dicen la verdad, pero volviendo a las declaraciones aportadas por la parte demandante, especialmente a la de Josefa Busigó, se llega a la conclusión de que no es concebible que pueda fabricarse una prueba semejante, y la conciencia queda satisfecha de que es un hecho cierto la existencia de las relaciones entre Texera y Josefa y el nacimiento de los hijos, los demandantes, y otro más que murió, como consecuencia de dichas relaciones.

Surge seguidamente la otra cuestión envuelta, o sea la de si la prueba aporta todos los requisitos que exige la ley para el reconocimiento.

A nuestro juicio la existencia del concubinato quedó demostrada satisfactoriamente. El hecho de que Texera tuviera una habitación en su propia oficina en donde durmiera a su conveniencia y siguiendo su costumbre de hombre soltero, no obsta para concluir que vivió bajo el mismo techo, a las claras, con Josefa Busigó. No se trata de relaciones de momento, sino de un estado que duró varios años. No existe un sólo hijo: fueron tres. Texera ayudó a reparar la casa en que vivía Josefa con su madre y la amuebló y allí dormía regularmente y allí era visto por sus vecinos y allí tomaba su desayuno que le preparaba su querida o concubina.

También quędó comprobado que el primer hijo fué pública y privadamente reconocido por el padre quien lo llevó a la escuela y a la plaza pública del pueblo en que nació y vivía, y realizó otros actos repetidos de reconocimiento. Y con respecto al hijo más pequeño bien puede sostenerse partiendo de la base de una situación creada y desarrollada por tanto tiempo, que se halló desde su nacimiento en la posesión del estado de hijo natural y así continuó hasta la muerte del padre, no obstante el alejamiento de éste en los últimos meses de su vida de su concubina por los motivos que ella explicó al declarar en el juicio.

La evidencia presenta a Texera como un hombre raro y enfermo y vacilante que eludió siempre el cumplimiento pleno de sus deberes para con la mujer que a él se entregó y para con los hijos que con ella tuvo, pero que a virtud de sus actos dejó prueba bastante de la realidad de los hechos y de su intención, para que una corte pueda suplir por su sentencia el acto solemne y fehaciente para todos que dejó de hacer en vida.

*Debe confirmarse la sentencia apelada.*